UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| ELISHA MARIE BOLES, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 4:07-CV-22 |
| v. | ) | |
| | ) | *Mattice / Lee* |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This action was instituted by the Plaintiff pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying the Plaintiff a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's motion for judgment on the pleadings [Doc. 13] and Defendant's motion for summary judgment [Doc. 15].

For the reasons stated herein, I **RECOMMEND** that: (1) Plaintiff's motion for judgment on the pleadings [Doc. 13] be **DENIED** (2) Defendant's motion for summary judgment [Doc. 15] be **GRANTED**; (3) the decision of Commissioner be **AFFIRMED**; and (4) this action be **DISMISSED**.

## Administrative Proceedings

Plaintiff filed applications for DIB and SSI on June 10, 2005, alleging disability commencing on May 18, 2003, due to post-traumatic stress disorder ("PTSD") (Tr. 18, 20, 54-59).[1] After her applications were denied initially and upon reconsideration, Plaintiff a hearing before an ALJ was held and, on October 26, 2006, the ALJ found Plaintiff was not disabled because she retained the ability to perform work existing in the national economy (Tr.18-23, 35-38). The decision of the ALJ became the final decision of the Commissioner on April 12, 2007, when the Appeals Council denied review of the ALJ's decision (Tr. 5-8, 9-12).

## Standard of Review

The Court must determine whether the ALJ failed to apply the correct legal standard and whether the ALJ's findings of fact were unsupported by substantial evidence. 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because

---

[1] Plaintiff's SSI application does not appear in the administrative transcript. In his memorandum, the Commissioner indicated Plaintiff's "SSI records were not available for inclusion in the transcript." [Doc. 16 at 1 n. 1].

substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d at 388 (citation omitted).

## How Disability Benefits Are Determined

The Sixth Circuit recently reiterated the five-step procedure used by the Social Security Administration ("SSA") to determine eligibility for disability benefits as follows:

> The [Social Security] Act entitles to benefits payments certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's expected duration, cannot engage in "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A). Such claimants qualify as "disabled." *Id.* A claimant qualifies as disabled if she cannot, in light of her age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To identify claimants who satisfy this definition of disability, the SSA uses a five-step "sequential evaluation process." 20 C.F.R § 404.1520(a)(4). The five steps are as follows:

> In step one, the SSA identifies claimants who "are doing substantial gainful activity" and concludes that these claimants are not disabled. *Id.* § 404.1520(a)(4)(i). If claimants get past this step, the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. *Id.* § 404.1520(a)(4)(ii). Claimants with

3

> impairments of insufficient duration are not disabled. *See id.* Those with impairments that have lasted or will last at least twelve months proceed to step three.
>
> At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. *Id.* § 404.1520(a)(4)(iii). Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. *Id.* § 404.1520(a)(4)(iii), (d). The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *See Sullivan v. Zebley,* 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.
>
> In the fourth step, the SSA evaluates claimants' "residual functional capacity," defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual functional capacity permits them to perform their "past relevant work" are not disabled. *Id.* § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. *See id.* § 404.1520(a)(4)(v), (g)(1). Claimants who can perform such work are not disabled. *See id.;* § 404.1560(c)(1). The SSA bears the burden of proof at step five. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003).

*Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).

## **ALJ's Findings**

The ALJ made the following findings in support of Commissioner's decision, which are

4

conclusive if they are supported by substantial evidence in the record:

1. The claimant meets the insured status requirement of the Social Security Act through September 30, 2008.

2. The claimant has not engaged in substantial gainful activity since May 18, 2003, the alleged onset date . . . .

3. The claimant has the following severe impairment: posttraumatic stress disorder . . . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . .

5. After careful consideration of the entire record, the undersigned finds that the claimant has the ability to understand, remember, and carry out simple instructions; has the residual functional capacity to complete a workweek without more than mild psychologically-based disruption; is precluded from dealing with the general public and does better interacting with things than people; is unable to travel independently at night; but can set realistic goals.

6. The claimant is unable to perform any past relevant work . . . .

7. The claimant was born on April 29, 1980 and was 23 years old on the alleged disability onset date, which is defined as a younger individual . . . .

8. The claimant has a limited education and is able to communicate in English . . . .

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferrable job skills . . . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform . . . .

11. The claimant was not "disabled" as defined n the Social Security Act, from May 18, 2003, through the date of this decision . . . .

(Tr. 20-23).

## Issues Presented by Plaintiff

The Plaintiff presented the following issues for review:

> **I.** The ALJ erred in failing to consider the entire record, particularly the June 2006 evaluation of Dr. Greg Kyser, evaluating Plaintiff's mental impairment.
>
> **II.** The ALJ erred in finding that the Plaintiff was not a credible witness.
>
> **III.** The Commissioner's decision below should be reversed outright, and payment of benefits ordered, because the record overwhelmingly supports disability in this case.

[Doc. 14 at 4].

## Review of Evidence

*Plaintiff's Age, Education, and Past Work Experience*

Plaintiff is a 27-year-old who completed the tenth grade and has past relevant work as a pizza delivery driver, cashier, and cook (Tr. 65-68; 329-30). On her alleged onset date of May 18, 2003, Plaintiff was delivering pizzas when she was attacked by a customer who slit her throat with a knife (Tr. 262, 290).

*Medical Evidence*

The medical evidence is discussed in detail in the parties' memoranda [Doc. 14 at 2-4; Doc. 16 at 3-9]. Although all of the medical evidence of record has been reviewed, for the sake of clarity and conciseness only the most pertinent evidence will be discussed herein.

Horace Edwards, Ph. D. completed an assessment of Plaintiff's mental residual functional

capacity ("RFC") for the state agency on November 28, 2005 (Tr. 139-42). Dr. Edwards indicated Plaintiff was moderately limited in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; complete a normal workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavior extremes; and set realistic goals or make plans independently of others (Tr. 139-40). Her ability to interact appropriately with the general public was found to be markedly limited (Tr. 140). The remaining aspects of Plaintiff's mental RFC for work were not found to be significantly limited (*id.*). Dr. Edwards indicated Plaintiff could understand, remember, and carry out simple and low-level detailed instructions, could accept criticism from supervisors with only occasional difficulty and could set realistic goals without significant emotional difficulty (Tr. 141). Dr. Edwards further indicated Plaintiff could not deal with the general public and would have difficulty but would be able to sustain attention and concentration, keep to a schedule, maintain attendance, and complete a workweek (*id.*). Dr. Edwards indicated Plaintiff could work around other people but would do better dealing with things rather than people (*id.*).

Dr. Edwards also completed a psychiatric review technique form ("PRTF") (Tr. 143). He indicated Plaintiff suffered from an affective disorder as set forth in § 12.04 of the listings and anxiety-related disorder as set forth in § 12.06 of the listings (Tr. 143). Dr. Edwards also indicated Plaintiff's conditions did not satisfy either the "B" criteria or the "C" criteria of either of the two

7

listings (Tr. 153-54).

In a physician's statement dated August 14, 2005, G. Todd Webb, M.D., a treating physician, indicated Plaintiff was capable of managing her own funds and did not address the issue of maintaining employment of living alone (Tr. 160).[2] In physician's statements dated August 14, 2005 and May 18, 2006, Dr. Webb indicated Plaintiff was not capable of maintaining employment (Tr. 159, 161). In August 2005, Dr. Webb diagnosed Plaintiff as suffering from: (1) PTSD, (2) acute panic disorder with agoraphobia, (3) and major depressive disorder, single episode, moderate (Tr. 228). He indicated Plaintiff's global assessment of functioning score ("GAF") was 60 and that in the previous twelve months, her GAF score had ranged from a high of 60 to a low of 55 (*id.*). Dr. Webb also indicated Plaintiff's level of functioning was unchanged (*id.*). Dr. Webb made the identical diagnoses and observations about Plaintiff's GAF in a treatment note in March 2006 (Tr. 169).

On July 25, 2005, Dr. Webb completed an assessment of Plaintiff's mental RFC indicating Plaintiff's conditions had: (1) a mild impact on her activities of daily living and caused occasional problems with daily task; (2) a moderate impact on her interpersonal functioning with limited socialization noting she gets anxious; (3) a moderate impact on her concentration, task performance and pace which caused difficulty with concentration under stress; and (4) moderate impact on her adaptation to change noting change brings on stress (Tr. 183-85). Dr. Webb also indicated Plaintiff had experienced a more severe functional impairment in the past and that she would need continuing

---

[2] Numerous treatment/therapy notes from Dr. Webb's practice appear in the record (*see e.g.*, Tr. 162-69, 170-82, 189-227, 229-41, 307-11). An unsigned assessment dated August 10, 2006, similar to Dr. Webb's signed assessment but more restrictive, also appears in the record (Tr. 313-15).

8

services to prevent a relapse (Tr. 184). Finally, Dr. Webb indicated Plaintiff had not been "recently severely impaired," but had been severely impaired in the past (Tr. 185).

On October 8, 2005, William O'Brien, Psy. D. performed a clinical interview and mental status examination of Plaintiff for the state agency (Tr. 133). Dr. O'Brien stated he found no significant evidence of malingering, exaggeration, inconsistency, or lack of effort on Plaintiff's part (Tr. 133). Plaintiff was alert and oriented to person, place, time and situation (Tr. 134). She drove herself to the interview (Tr. 134). Plaintiff told Dr. O'Brien she worked at a Wal-Mart for approximately two weeks but quit because she was required to work the 2:00 p.m. to 10:00 p.m. shift and was experiencing an increase in panic attacks (Tr. 135). Plaintiff also told Dr. O'Brien she returned to Papa John's Pizza after the attack for six months, but she quit because she was "treated like crap" and "they were rude to me." (*Id.*). Plaintiff also reported to Dr. O'Brien she was experiencing a reduction in the PTSD symptoms, including a decrease in the number of panic attacks (Tr. 136). However, she also told Dr. O'Brien that at nighttime she either needed to have someone with her or be in a safe area (*id.*). Plaintiff's daily activities included caring for her one-year old child, including taking the baby outside during the daytime (Tr. 137). She told Dr. O'Brien she was capable of carrying out household-related tasks, including meal preparation, washing dishes, doing laundry, and straightening out her household, without disruption (*id.*). Dr. O'Brien diagnosed PTSD (*id.*). Dr. O'Brien stated Plaintiff was experiencing a mild disruption in her ability to sustain concentration and persistence and remember moderate to complex instructions (*id.*). He stated she also experienced moderate to significant impairment in her ability to travel independently in the evening hours or work with others in a moderate to a large social setting (*id.*). He stated Plaintiff was able to travel independently during the daytime hours, maintain basic standards in

9

neatness/cleanliness, be aware of normal hazards, take precautions, make plans independently of others, and set realistic goals for herself (*id.*).

Greg Kyser, M.D. performed a psychiatric interview of Plaintiff on June 12, 2006, as part of her worker's compensation claim against her former employer (Tr. 295-301). In addition, Dr. Kyser reviewed Plaintiff's medical records (Tr. 295). Plaintiff described the assault which took place on May 18, 2003 (Tr. 295-96). Dr. Kyser stated Plaintiff's current psychiatric symptoms included avoidance, hypervigilance, autonomic hyperactivity and reliving events (Tr. 296). Dr. Kyser stated Plaintiff was stressed as the result of losing her home, car and employment and her mood was dysphoric (*id.*). Dr. Kyser then reviewed the medical reports and documents which had been forwarded to him for review (Tr. 297-99). Based upon his interview with Plaintiff and his review of her medical records, Dr. Kyser diagnosed: (1) PTSD, chronic and (2) major depression, single episode, moderate to severe (Tr. 300). Dr. Kyser stated that Plaintiff had the classic symptoms of PTSD, which caused clinically significant distress and impairment in social, occupational and other important areas of functioning (*id.*). Dr. Kyser also stated that based upon his review of Plaintiff's records as well as his psychiatric interview, he found no evidence of malingering or symptom magnification on the part of Plaintiff and agreed with Dr. Webb that she would need long-term psychiatric treatment (*id.*). Dr. Kyser indicated Plaintiff's activities of daily living were moderately impaired; her social functioning was markedly impaired; her concentration, persistence and pace were moderately impaired; and her deterioration or decompensation in complex or work-like settings was markedly impaired (Tr. 300-01). Dr. Kyser stated Plaintiff's overall impairment rating was moderate to marked, corresponding to a 62.5% psychiatric impairment rating (Tr. 301).

*Hearing Testimony*

1. **Plaintiff**

Plaintiff was 26 years of age at the time of the October 2, 2006 hearing and lived with her young daughter in her parents' home (Tr. 327-28). Plaintiff had a valid driver's license and was able to drive as needed (Tr. 329). She last worked at Wal-Mart as a cashier for two weeks and left because she was unable to face having to deal with the public (Tr. 330). Plaintiff was undergoing counseling every two weeks (Tr. 331-32). Plaintiff stated she normally does not get a full night's sleep because of nightmares (*id.*). Plaintiff testified she swims for exercise, does her own grocery shopping but needs someone with her because she does not like to be with a crowd, does almost all of her own house work, and cares for her child, including outside play with her child (Tr. 332-33). Plaintiff testified her goals are to get better, go back to school, and provide a decent living for her child and herself (Tr. 334). She stated she liked working, but was unable to work because she cannot face people (Tr. 334-35). She stated that even a job where she did not have to deal with anybody will trigger her symptoms and that she just cannot do any kind of work right now (*id.*). She also stated she has one or two crying spells per day (Tr. 335-36). Plaintiff stated she has panic attacks and flashbacks (Tr. 337).

2. **The Vocational Expert**

Jane L. Hall testified as the vocational expert ("VE") at the hearing (Tr. 339). She stated Plaintiff's past relevant work as a pizza deliverer was an unskilled job at the light level of exertion; her past work as a cashier was also an unskilled job at the light level of exertion; and her job as a cook at a restaurant, as she performed it, was a low-level semi-skilled job at the medium level of exertion (Tr. 340-41). In response to a question involving a hypothetical claimant of the same age,

education and work experience as the Plaintiff--who was able to understand, remember, and carry out simple and low level detailed instructions; had difficulty but could sustain attention and concentration; could keep to a schedule, maintain attendance, and complete a workweek; could work with and around others, but still do better with things rather than people; could not deal with the general public; could accept criticism from supervisors with only occasional difficulty; could set realistic goals without significant emotional difficulty--the VE stated there would be jobs such an individual could perform in the national and regional economies (Tr. 341). The VE stated such a hypothetical individual could perform the job of: (1) a medium level cleaner, with 18,000 jobs in Tennessee and 438,000 jobs in the United States; (2) a food preparation person, with 2,300 jobs in Tennessee and 133,000 jobs in the United States; and (3) a production worker, with 5,500 jobs in Tennessee and 177,000 jobs in the national economy (Tr. 341-42).

In response to a question involving a hypothetical individual who had the same age, education and past relevant work history as Plaintiff and who also had marked limitations in her ability to function socially, had marked limitations and deteriorations or decompensation in complex or work-like settings, had moderate restrictions in concentration, persistence, and pace, and with a GAF of 45, the VE testified such an individual would be unable to work (Tr. 342).

## **Analysis**

### *Dr. Kyser's Opinion*

Plaintiff asserts the ALJ failed to consider the entire record, especially the June 2006 evaluation of Dr. Kyser, in evaluating her mental impairment and RFC [Doc. 14 at 5-6]. Plaintiff asserts Dr. Kyser's report, if fully credited, would indicate she experiences disabling limitations [*id.* at 6]. Plaintiff asserts the ALJ failed to consider Dr. Kyser's report because "nowhere in the ALJ's

12

decision is this medical opinion noted, even though Plaintiff's counsel at her hearing discussed this evaluation at length." [*Id.*].

The regulations state that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. §§ 404.1527(d), 416.927(d). Plaintiff is correct that the ALJ did not explicitly mention Dr. Kyser's report or discuss his reasons for discounting Dr. Kyser's report in his decision. However, "although required to develop the record fully and fairly, an ALJ is not required to discuss all of the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467 (6th Cir. 2004).

Under certain circumstances, the failure of an ALJ to mention the report of a treating physician is harmless error. *Id.* at 467 (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535-36 (6th Cir. 2001)). Thus, the Sixth Circuit reasoned in *Dykes* that because it "involve[d] the opinion of a consultative examiner, whose opinion is usually entitled to less weight than that of a treating physician" under 20 C.F.R. § 404.1527(d), then "[l]ogically . . . if the refusal to even acknowledge the opinion of a treating physician was harmless error in *Heston*, . . . the ALJ's failure . . . to discuss thoroughly the opinion of a consultative examiner does not warrant reversal." *Dykes*, 112 F. App'x at 467.

The same result as was reached in *Dykes* is required here. Although the ALJ did not explicitly mention Dr. Kyser's report, the record shows that he must have considered and rejected Dr. Kyser's opinion. First, the ALJ gave explicit reasons for rejecting the assessments of Plaintiff's treating physician, Dr. Webb, stating:

> a functional assessment by Dr. Webb, dated July 25, 2005, indicated that although the claimant had been severely impaired in the past, at

> that time she had no more than moderate limitations of concentration, adaptation to change, and interpersonal functioning; and mild limitations of daily activities. . . The undersigned is not persuaded by the medical source statements submitted by Dr. Webb, dated August 14, 2005, and May 18, 2006, in which he states that the claimant was not capable of maintaining employment. These statements are inconsistent with his own July 2005 assessment in which he found no more than mild to moderate limitation.
>
> A psychological consultative evaluator from October 28, 2005, and which diagnosed only posttraumatic stress disorder, assessed "mild" disruption of the ability to sustain concentration and persistence; with moderate to significant impairment of the ability to travel independently in the evening hours or work in a large social setting. A non-examining state agency psychologist assessed the capacity to carry out simple and low-level detailed instructions; to sustain attention and concentration, maintain a schedule and attendance, and complete a workweek; work with infrequent contact with other employees and no contact with the public . . . .

(Tr. 21-22) (internal citations omitted).[3] As Dr. Kyser's assessment is more restrictive than Dr. Webb's July 25, 2005 assessment, it is reasonable to conclude it was rejected for the same reasons as Dr. Webb's medical source statements – as being inconsistent and not supported by the findings of Dr. Webb.

Second, the ALJ discussed the opinions of the other consulting and reviewing physicians of record. As argued by the government, Dr. Kyser's assessment was not only more extreme and, hence, inconsistent with the assessment of Dr. Webb, it was more extreme and inconsistent than the other consulting and reviewing examinations explicitly discussed and accepted by the ALJ.

Third, the ALJ did explicitly incorporate the limitations set forth in Dr. Kyser's assessment into his second hypothetical to the VE and the VE testified that a hypothetical individual of

---

[3] Plaintiff has not challenged the ALJ's decision not to accord controlling weight to Dr. Webb's assessment.

Plaintiff's age, education and experience with the restrictions set forth by Dr. Kyser would be unable to perform any work (Tr. 342). As the ALJ found that Plaintiff was not disabled, he implicitly rejected Dr. Kyser's assessment despite his failure to explicitly set forth his reasons for doing so.[4]

Accordingly, contrary to Plaintiff's assertions, the ALJ's failure to explicitly state his reasons for rejecting Dr. Kyser's assessment after his consultative examination of Plaintiff is, at most, harmless error because a review of the record shows the ALJ must have considered and rejected the assessment.

*Subjective Complaints*

Plaintiff asserts the ALJ erred in finding her subjective complaints were not credible. The ALJ found:

> the claimant's medically determinable impairment could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(Tr. 21). The Plaintiff asserts her credibility is supported by Dr. Kyser's review [Doc. 14 at 7]. She further asserts her credibility is supported by the fact that she has consistently sought treatment from mental health providers since the weeks following the attack [*id.*].

The intensity and persistence of the claimant's symptoms must be evaluated to determine whether those symptoms limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c)(1) and 416.929(c)(1). Relevant evidence for the ALJ's determination includes the claimant's medical

---

[4] Plaintiff claims the ALJ should have considered Dr. Kyser's opinion that she had moderate to marked limitations due to her PTSD – which she asserts would satisfy the "B" criteria of either listing 12.02 or listing 12.04, As argued by the Commissioner, however, Plaintiff has not challenged the ALJ's finding at step two of the evaluation process that she did not have an impairment or combination of impairments that met or equaled any of the listings (Tr. 21).

history, statements by treating physicians, medications taken, medical treatment other than medication, methods the claimant has used to relieve her symptoms, precipitating and aggravating factors, daily activities, and statements by the claimant. 20 C.F.R. §§ 404.1529(c) and 416.929(c). Ultimately, it is the functional limitations imposed by a condition rather than the diagnosis itself which determines whether an individual is disabled. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam).

In determining credibility, the ALJ considers, among other things, whether there are any inconsistencies between the claimant's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). "Discounting credibility to a certain degree is appropriate where the ALJ finds contradiction among the medical reports, claimant's testimony , and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Because the ALJ is charged with the responsibility of observing the demeanor and credibility of the witness, his conclusions should be highly regarded. *Id.*; *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).

The record reflects the ALJ reasonably considered a variety of relevant factors in assessing the overall nature and severity of the limitations caused by Plaintiff's impairments and symptoms. The ALJ acknowledged the unfortunate attack on Plaintiff and the resulting mental symptomatology, including anxiety attacks, crying spells, nightmares, reluctance to sleep, and reluctance to be alone or go out alone (Tr. 20-21). The ALJ also acknowledged Plaintiff was receiving regular mental health treatment (Tr. 21). The ALJ specifically credited the July 25, 2005 assessment of Plaintiff's treating physician, Dr. Webb – who had the most longitudinal treatment relationship with Plaintiff – that although she had been severely limited in the past, her condition/symptomatolgy had

16

improved with treatment (Tr. 21). The ALJ also noted that the assessment of Dr. O'Brien as the result of his consultative examination of the Plaintiff and Dr. Edward's assessment as the result of his review of the records were consistent with Dr. Webb's July 25, 2005 assessment. Further, as noted above, the ALJ implicitly rejected Dr. Kyser's assessment which was inconsistent not only with Dr. Webb's July 25, 2005 assessment, but the assessment of Drs. O'Brien and Edwards as well. Contrary to Plaintiff's assertions, I find the ALJ did not err in weighing the Plaintiff's subjective complaints.

Having reviewed the record in its entirety, particularly with regard to the claims of error asserted by the Plaintiff, I **CONCLUDE** the decision of the ALJ is supported by substantial evidence in the record, even thought the record also contains evidence that could support a contrary conclusion. Therefore, I **RECOMMEND** the decision of the Commissioner denying benefits to Plaintiff be affirmed.

## Conclusion

Having carefully reviewed the administrative record and the briefs of the parties filed in support of their respective motions and for the reasons stated above, I **RECOMMEND**:[5]

(1) Plaintiff's motion for judgment on the pleadings [Doc. 13] be **DENIED**;

(2) Defendant's motion for summary judgment [Doc. 15] be **GRANTED**;

---

[5] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

(3) Judgment be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure **AFFIRMING** the Commissioner's decision which denied benefits to the Plaintiff; and

(4) This action be **DISMISSED**.

                                                       s/*Susan K. Lee*
                                                       SUSAN K. LEE
                                                       UNITED STATES MAGISTRATE JUDGE